CHASE *v.* BROWN.

# Emily D. Chase v. Elijah W. Brown and others.

*Mortgages: Foreclosure: Defense: Evidence.* The defense set up to the mortgage sought to be foreclosed in this case, to the effect that, notwithstanding a formal assignment in writing by the mortgagee to the complainant, in part payment of his contract for the purchase from her of certain lands, and the express provision in writing in such contract that he should guaranty the payment to her of the mortgage, it was verbally understood between them, as a part of the very transaction for the sale to him of said lands, that the mortgage should nevertheless still remain his property, in consideration of his undertaking to advance an indefinite sum, and to render indefinite future services about the settlement of a law suit of her husband's relating to these very lands, is held to be opposed to every presumption, inconsistent with all probabilities and unsupported by the evidence.

*Foreclosure: Defense: Evidence.* The further claim of defense, that such mortgagee, after he had made advances and rendered services in pursuance of such verbal arrangement, had an accounting with complainant, to which she assented, and which absorbed the mortgage, except one hundred and six dollars, and that this balance was thereupon tendered her, is held to be not merely not sustained, but to be clearly contradicted by the evidence.

*Accounting: Assent: Evidence.* The refusal to accept a tender of the amount shown by the accounting to be owing to her is the very touchstone to try whether she assented to such accounting; and the unqualified rejection of such a main fact in her favor involved in such assent is inconsistent with the alleged fact of assent.

*Foreclosure: Mortgage: Transfer: Title: Defense.* The fact that a complainant who is seeking to foreclose a mortgage has, pending the suit, borrowed money of a third person on the mortgage on the understanding that she should continue the prosecution of the cause, and in the event of her success should repay the money so borrowed, with interest, would be no defense to the foreclosure.

*Mortgagor: Payment by another: Equities.* A mortgagor who has paid nothing can claim no equities, as against the assignee of the mortgage, by reason of payment made by his grantee of the equity of redemption to the mortgagee, who had, under a pretended claim of right, wrongfully obtained possession of the securities from a bailee of the assignee.

*Mortgages: Voluntary payment to person not entitled to collect: Notice: Real owner: Suit pending.* Voluntary payment of a mortgage to one not lawfully entitled to collect it, after notice from the real owner not to do so, and after suit brought by such owner to foreclose the mortgage, is no protection to any one.

*Submitted on briefs April 29. Decided June 16.*

Appeal in Chancery from Kent Circuit.

*Eggleston & Kleinhans,* for complainant.

*William L. Stoughton* and *D. Darwin Hughes,* for defendants.

32 MICH.—29.

CHASE v. BROWN.

GRAVES, CH. J:

This is an appeal by the defendants against a final decree of the circuit court for the county of Kent, in chancery, for the foreclosure of a mortgage given by defendant Brown to defendant Jenne, and by him assigned to complainant; the defendant Powell having become owner of the equity of redemption. The mortgage was given November 21st, 1866, for nine hundred and four dollars and forty-eight cents; of which four hundred and fifty dollars was to be paid October 12th, 1867, and four hundred and fifty-four dollars and forty-eight cents in a year therefrom, with annual interest. The mortgagor's notes, corresponding with these instalments, accompanied the mortgage. The assignment by Jenne to complainant was on January 28th, 1867, and was in due form. The bill was filed October 16th, 1867, and after describing the securities and the assignment, it further stated that Jacob Ferris, then of Grand Rapids, was acting as complainant's attorney in other matters at the time of the assignment, and that she at once placed the papers in his hands for safe keeping, and went some distance to stay and effect a homestead settlement; that afterwards, and in May, 1867, she returned to Grand Rapids to get the papers in order to raise money upon them to support herself and children, and then applied to Mr. Ferris, who informed her he had loaned the securities temporarily to the assignor, the defendant Jenne; that subsequently she was informed that Jenne claimed to own them. She charges such claim to be false, and avers that she has continued to be the exclusive and absolute owner since the assignment to her on the 28th of January, 1867, and that Jenne since that event had possessed no right or interest.

The defendants Brown and Powell answered generally, and in substance denied complainant's equities. The defendant Jenne answered separately, and set up title to the securities. His explanation there given of his right and its origin is not clear.

The substance of it would seem to be to the following effect: That for many years prior to the 28th of January, 1867, the right to a parcel of land in Kent county had been in litigation between complainant's husband, William A. Chase, and one George W. Bush, who was in possession and claiming to be owner; that this litigation was in full actual progress on the 28th of January, before mentioned, and the issue wholly uncertain; that Chase, the husband, had for many years been absent, and that the litigation and its needs had devolved on complainant, who was poor and without adequate means to effectually carry it on; that in this state of things he (defendant Jenne), on the day just mentioned, concluded a bargain with complainant, who assumed to have authority from her husband to contract, but not to deed, for the purchase of the land for his son, Newton E. Jenne, for the price of three thousand dollars, and that the mortgage and notes in question were, according to this agreement, assigned in satisfaction of part of the payment required in hand; that at this time it was further arranged with complainant, that he (Jenne) should proceed to pay certain sums, of which the amount was not then ascertained, and render such personal services as might be necessary to wind up the litigation with Bush; and, notwithstanding the absolute assignment of the notes and mortgage to complainant, as payment of part of the consideration for the land, that they should belong to Jenne absolutely, and be in his possession and power, to enable him to raise the money that should be needed under this arrangement; that he proceeded and made payments and rendered services to close up the Bush litigation, and received the notes and mortgages on the strength of the said arrangement; that afterwards, and on the 27th of April, 1867, a full account of his doings was rendered to complainant, and that she assented and agreed thereto, and that this accounting, to which she assented and agreed, absorbed the entire mortgage, less one hundred and six dollars, which he tendered to her.

This reference does not, of course, embody all the answer

states on the subject, but it will indicate with sufficient full-
ness the outline of Jenne's position.

After a thorough scrutiny of the pleadings and evidence
the case is found to depend entirely upon the facts, and we
think it merits no lengthy exposition.

There are some things disclosed by the record which
merit severe reprehension; but we are not disposed to make
special comment upon them.

Aside from specific peculiarities of the case made by Jen-
ne's answer, the first difficulty encountered is, that the proof
does not harmonize with it.    Even the evidence given by
Jenne himself, departs widely from it.    But waiving this
variance, and yielding all possible credit to whatever matter
of defense the evidence shows, standing by itself, there is
even then no ground for changing the decree below.

The first position of defendant Jenne is, that in the very
transaction in which he bargained for the land in dispute
between Chase and Bush, and assigned in part payment the
notes and mortgage to the complainant, by writing wit-
nessed and acknowledged, she by verbal terms at once made
the securities his own, in consideration of his indefinite
undertaking concerning the land and the litigation.    The
contract for the sale of the land was in writing.    It pro-
vided for the transfer of the notes and mortgage to com-
plainant, and even that Jenne should guaranty the payment
of the notes.    Conveyance of the land was not to be made
until the last payment, and that was not required until Jan-
uary first, 1873.    No provision was made in it for giving
possession before conveyance.    Why all this guarded care
about the bargain for the land, and the transfer of the
notes and mortgage? and why the extreme precaution to
have written down in the contract, that Jenne should guar-
anty the payment of the notes?    Are these things consistent
with the notion that, as part of the same transaction, it
was understood that, after all, these notes and the mort-
gage should belong to Jenne, in consequence of his promise
to advance indefinite sums and render indefinite services, and

further, that this branch of the arrangement should rest on verbal terms?

Every presumption is against the existence of any such arrangement, and we think the evidence by witnesses, when carefully scanned, agrees with probability. It would be a waste of time to notice all the facts, and some of them could scarcely be described in very measured terms.

The next position taken by Jenne is, that in April, 1867, and after he had made advances and rendered services, he gave complainant a statement of the proceedings of himself and her counsel, and of his claim to hold the securities, and showing that her mortgage was eaten up, except one hundred and six dollars, and that she thereupon ratified what had been done, and agreed to the result.

The proof does not merely come short of maintaining this position. It contradicts it.

The transaction of April, 1867, occupied the better part of two days. It was a single one. Jenne and others were trying to bring complainant, during this entire occasion, to abide by his plan. The effort was to get her to submit to his claim; to induce her to agree that his charges were right, that they must come out of the mortgage, that only one hundred and six dollars remained for him to pay, and that the securities were his property.

The question is not whether in the vicissitudes of her hopes and fears, and the fluctuations of her mind under the influences operating upon her during this time of debate and indecision, she may not have appeared to yield, but the question is, whether, in the end, when the matter was ripe, when deliberation was over, she assented to Jenne's claim. Without stopping to ask whether the matters were honestly explained to her, the question is overwhelmingly answered by the evidence on all sides. When the transaction culminated, and her decision was to be made, she explicitly refused to assent to Jenne's claim. He offered her the one hundred and six dollars. She refused to touch it. This was the very touchstone to try whether she assented or not. She could

not assent to his demand, and at the same time unqualifiedly reject a main fact involved in such assent.

Jenne, then, neither became owner after his assignment on the 28th of January, 1867, or at the time of the protracted interview in April, and he does not pretend to have become owner at any other time.

His defense therefore fails, so far as it rests on his ownership.

But complainant's case is resisted on another ground. The point is made that she has assigned to Phelps her interest in the notes and mortgage. We think this claim has no basis. It rests entirely upon Phelps' testimony, and unless we discredit him, and so sweep away the whole ground for the point, we must accept the fair result of what he says; and he at last states positively that he merely lent her two hundred and fifty-five dollars, on the understanding that she should continue the prosecution of this cause, and in the event of her success, that he should have his money returned with interest. We discover nothing to cast a shade on Mr. Phelps' testimony, and his arrangement, as thus stated by him, did not trench on complainant's title.

Lastly, it is urged that, if the court conclude that as between complainant and Jenne her right is substantiated, then Brown, the mortgagor, and Powell, the purchaser of the equity of redemption, ought to be protected. Because, as is said, complainant made it possible for Jenne to collect of Powell, as he has done. The case admits that the obligation to pay was cast on Powell, and not on Brown. But, however that may be, Brown has paid nothing, and that is sufficient for him.

In regard to Powell, the case is no better. The facts afford no foundation for the principle counsel must have had in mind. Powell claims to have paid the mortgage through one Watkins.

The evidence is, that his payment was not only voluntary, but after notice to him by complainant not to pay to Jenne. And not only so, but the evidence of the *time of*

*payment,* which rests upon Jenne's acknowledgment of satisfaction on the record of the register of deeds, shows it to have occurred on the 23d of October, 1867, being several days *after the commencement of this very foreclosure.* He paid then at his peril, unless he chose to require indemnity, which is not improbable.

The decree below should be affirmed, with costs.

The other Justices concurred.